Ryan L. Gentile, Esq.
Law Offices of Gus Michael Farinella, PC
110 Jericho Turnpike - Suite 100
Floral Park, NY 11001
Tel: 201-873-7675
Attorney for Plaintiff, Nicola Clarke,
on behalf of herself and all others similarly situated

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
--------------------------------------------------------X
Nicola Clarke, on behalf of herself
and all others similarly situated,

                       Plaintiffs,

    v.

Financial Recovery Services, Inc.

                       Defendant.
--------------------------------------------------------X

**CLASS ACTION COMPLAINT**

Plaintiff, by and through her counsel, Ryan Gentile, Esq., as and for her complaint against the Defendant, on behalf of herself and pursuant to Rule 23 of the Federal Rules of Civil Procedure all others similarly situated, alleges as follows:

**INTRODUCTION**

1. Plaintiff, on her own behalf and on behalf of the class she seeks to represent, brings this action to secure redress for the debt collection practices utilized by Financial Recovery Services, Inc. ("FRS") in connection with their attempts to collect alleged debts from the Plaintiff and others.

2. Plaintiff alleges that the Defendant's collection practices violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA")

1

3. The FDCPA broadly prohibits conduct which harasses, oppresses or abuses any debtor; any false, deceptive or misleading statements in connection with the collection of a debt; unfair or unconscionable collection methods; and requires certain disclosures. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

4. The FDCPA is generally characterized as a "strict liability" statute because "it imposes liability without proof of an intentional violation." Glover v. FDIC, 698 F.3d 139 (3d. Cir. 2012) (citing Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 368 & n. 7 (3d Cir. 2011).

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's FDCPA claim pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

6. Venue and personal jurisdiction in this District are proper because:
   a. The acts giving rise to this lawsuit occurred within this District; and
   b. Defendant does business within this District.

## PARTIES

7. Plaintiff, Nicola Clarke is an individual natural person who at all relevant times resided in the City of Bergenfield, County of Bergen, State of New Jersey.

8. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

9. Defendant, Financial Recovery Services, Inc., is a corporation with its principal place of business located at 4510 W. 77th Street, Suite 200 Edina, MN 55435.

10. The principal purpose of FRS is the collection of debts using the mail and telephone.

11. FRS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

12. FRS's website states in relevant part, "For over 15 years, Financial Recovery Services has excelled in the field of debt collections and receivables management." (https://www.fin-rec.com/who-we-are/about-us/) (Last visited July 9, 2020).

13. FRS is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## FACTS

14. On or before June 1, 2018, Plaintiff allegedly incurred a debt to Barclays Bank Delaware ("Barclays") related to a Barclay's credit card with an account number ending in 7797 (the "Debt").

15. The Debt arose out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, namely fees emanating from a personal credit card account in Plaintiff's name that was issued by Barclays.

16. The Debt arose out of a credit card account which Plaintiff opened for her personal use.

17. Plaintiff's credit card account that was issued by Barclays was neither opened nor used by Plaintiff for business purposes.

18. Plaintiff's personal credit card account Debt to Barclays is a "debt" as defined by 15 U.S.C. § 1692a(5).

19. Sometime after the incurrence of the Debt, but before the initiation of this action, Plaintiff was alleged to have fallen behind on payments owed on the alleged Debt.

20. The Debt went into default because of non-payment.

21. At a time known only to Defendant, Plaintiff's Debt was referred to FRS by Barclays for collection.

22. The Debt was never assigned to FRS.

23. FRS was never transferred, sold, or assigned any interest or rights with regard to the Debt.

24. FRS is not the owner of the Debt or the Plaintiff's creditor, but rather is merely a third-party debt collector with no legal interest or right in the Debt.

25. FRS contends that the Debt is in default.

26. The Debt was in default at the time the Debt was referred to FRS for collection.

27. The Debt was past-due at the time the Debt was referred to FRS for collection.

28. At all times relevant hereto, Defendant acted in an attempt to collect the Debt.

29. On or about July 9, 2019, FRS mailed or caused to be mailed a letter to Plaintiff (the "Letter"). (Annexed and attached hereto as <u>Exhibit A</u> is a copy of the Letter dated July 9, 2020 that FRS mailed to the Plaintiff, except the undersigned counsel has in accordance with Fed. R. Civ. P. 5.2 redacted the financial account numbers and Plaintiff's street address to protect his privacy)

30. FRS mailed the Letter dated July 9, 2019 attached as <u>Exhibit A</u> as a part of their efforts to collect the Debt.

31. Plaintiff received the Letter in the mail.

32. Plaintiff read the Letter upon receipt of the letter in the mail.

33. The Letter was sent in connection with the collection of the Debt.

34. The Letter seeks to collect the Debt.

35. The Letter conveyed information regarding the Debt including the Balance Due, FRS Filet number and a request for payment.

36. The Letter attached as <u>Exhibit A</u> is a "communication" as that term is defined by 15 U.S.C. § 1692a(2).

37. The Letter attached as <u>Exhibit A</u> states in relevant part:

    ******INITIAL NOTIFICATION*****

38. The Letter then contains other information, including information about Plaintiff's dispute rights, that further makes the Letter seem like it was FRS's initial communication with the Plaintiff regarding the Debt.

39. The statement in the Letter that the Letter was the "initial notification" regarding the Debt is false.

40. The Letter attached as <u>Exhibit A</u> was not the "initial notification" regarding the Debt that FRS sent to Plaintiff.

41. FRS had previously sent collection letters to Plaintiff regarding the Debt on at least two occasions, specifically on April 15, 2019 and June 13, 2019.

42. Sometime between June 13, 2019 and July 9, 2019, FRS unilaterally changed both the FRS file number and online pin number that they had originally assigned to the Debt.

43. The FRS file number and online pin number appear on all the collection letters that FRS sent to the Plaintiff.

44. After FRS changed the FRS file number and online pin number, FRS sent out the Letter attached as <u>Exhibit A</u> containing the new FRS file number and online pin number.

45. By changing the file number and online pin number they had originally assigned the Debt, and which had appeared in the collection letters sent by FRS to Plaintiff prior to July 9, 2019, FRS

made it appear that the Debt referenced in the Letter attached as <u>Exhibit A</u> was a new and different debt, with a new and different FRS file number, from the one FRS had previously tried to collect from Plaintiff. In reality, it was the same Debt, but FRS falsely, deceptively and misleadingly changed the FRS file number for the Debt and sent an "initial notification" (which was not in reality an initial notification) regarding the Debt to Plaintiff with the "new" FRS file number to make the Debt appear like it was a new debt.

46. FRS collection practice is a high-volume practice.
47. FRS's debt collection practice is largely automated and utilizes standardized form letters.
48. Documents in the form represented by <u>Exhibit A</u> are regularly sent by FRS to collect debts
49. <u>Exhibit A</u> is a standardized form letter.
50. <u>Exhibit A</u> is a computer-generated form letter.
51. FRS mailed or caused to be mailed letters in the form of <u>Exhibit A</u> over the course of the past year to hundreds of New Jersey consumers from whom FRS attempted to collect a consumer debt.

## CLAIMS FOR RELIEF

## COUNT I

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

52. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.
53. The conduct of the Defendant in this case violates 15 U.S.C. §§ 1692, 1692e(10), and 1692g.

54. Collection letters and/or notices, such as the Letter attached as <u>Exhibit A</u> sent by Defendant to Plaintiff, are to be evaluated by the objective standard of the "least sophisticated consumer."

55. FRS violated 15 U.S.C. § 1692e(10) because their statement in the Letter that it was the "initial notification" was false, deceptive and misleading. The Letter was not the "initial notification" regarding the Debt that FRS sent to Plaintiff because FRS had previously sent collection letters to the Plaintiff regarding the Debt. However, FRS changed the file number they had originally assigned the Debt sometime between June 13, 2019 and July 9, 2019 to falsely make it appear to the Plaintiff in the Letter that FRS was trying to collect a new debt with a different FRS file number from the debt they were previously trying to collect, when in reality, it was the same debt.

56. FRS violated 15 U.S.C. § 1692e(10) and §1692g(a)(3) because their statement in the Letter that FRS would assume the Debt is valid unless the Plaintiff disputed the Debt within 30 days of their receipt of the Letter was false. As stated previously, FRS had sent Plaintiff collection letters regarding the Debt prior to the Letter dated July 9, 2019. Thirty days from the date Plaintiff received the actual "initial notice" from FRS regarding the Debt (sometime prior to April 15, 2019) had come and gone, and FRS has already assumed the Debt to be valid before sending the Letter on July 9, 2019.

57. FRS violated 15 U.S.C. § 1692e(10) and §1692g(a)(4) because their statement in the Letter that FRS would provide verification of the Debt if the Plaintiff disputed the debt in writing within 30 days of receipt of the Letter was false. As stated previously, FRS had sent Plaintiff collection letters regarding the Debt prior to the Letter dated July 9, 2019. Thirty days from the date Plaintiff received the actual initial notice from FRS regarding the Debt (sometime prior to April

7

15, 2019) had come and gone, and FRS was under no legal obligation to verify the Debt upon receipt of a written dispute within 30 days of Plaintiff's receipt of the Letter.

58. The false statements in the Letter are material because they would influence a least sophisticated consumer's decision to pay the debt by falsely making it seem like the debt is a new and different debt.

59. The false statements in the Letter are material because they would confuse a least sophisticated consumer as to their rights to dispute the debt which had already passed.

60. The violations of the FDCPA described herein constitute *per se* violations.

61. Plaintiff has alleged a particularized injury because the Letter was mailed and directed to her.

62. Plaintiff has alleged a concrete harm because the FDCPA creates a substantive right to be free from abusive debt communications and Defendants' violations of the FDCPA resulted in concrete harm to Plaintiff.

63. Defendant is liable to the Plaintiff and the proposed class pursuant to 15 U.S.C. § 1692k because of the above FDCPA violations.

## CLASS ALLEGATIONS

64. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

65. This action is brought as a class action. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

66. The Class is initially defined as (a) all consumers (b) with a New Jersey address (c) to whom FRS sent a letter which is materially identical or substantially similar to Letter attached as

Exhibit A to the Complaint (d) which was not returned as undeliverable (e) on or after a date one year prior to the filing of this action (f) which letter included the alleged conduct and practices described herein.

67. The class definition above may be subsequently modified or refined in an amended complaint or in any motion for class certification.

68. The proposed class specifically excludes the United States of America, the states of the Third Circuit, counsel for the parties, the presiding United States District Court Judge, the Judges of the United States Court of Appeals for the Third Circuit and the United States Supreme Court.

69. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

    i. **Numerosity**: The Plaintiff is informed and believes and on that basis alleges, that the class defined above is so numerous that joinder of all members would be impracticable. Upon information and belief, based on the fact that the Complaint involves a form collection letter, there are at least 40 members of the class. The exact number of class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery. The class is ascertainable in that the names and addresses of all class members can be identified in business records maintained by the Defendant.

    ii. **Common Questions Predominate**: There exists a well-defined community of interest in the questions of law and fact involved that affect

the parties to be represented. These common questions of law and fact predominate over questions that may affect individual class members. Such issues include, but are not limited to: (a) The existence of the Defendant's identical conduct particular to the matter at issue; (b) Defendant's violations of the FDCPA, specifically 15 U.S.C. §1692e and 15 U.S.C. §1692g; (c) The availability of statutory penalties; and (d) Attorneys' fees and costs.

iii. **Typicality**: The claims of the Plaintiff are typical of those of the class they seek to represent. The claims of the Plaintiff and the members of the class originate from the same conduct, practice, and procedure, on the part of the Defendant. Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts. Plaintiff possesses the same interests and has suffered the same injuries as each member of the proposed class. Plaintiff asserts identical claims and seeks identical relief on behalf of the unnamed class members.

iv. **Adequacy**: Plaintiff will fairly and adequately protect the interests of the class and has no interest adverse to or which directly and irrevocably conflicts with the interests of other members of the class. Plaintiff is willing and prepared to serve this Court and the proposed class. The interests of the Plaintiff are co-extensive with and not antagonistic to those of the absent class members. Plaintiff has retained the services of counsel who are experienced in FDCPA litigation and will adequately prosecute

this action, and will assert, protect and otherwise represent Plaintiff and all absent class members. Neither the Plaintiff nor their counsel have any interests which might cause them to not vigorously pursue the instant class action lawsuit.

v. **Superiority**: A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members of the class would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. Furthermore, a class action is superior for the fair and efficient adjudication of this matter because individual actions are not economically feasible, members of the class are likely to be unaware of their rights or that they were violated, and Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

**WHEREFORE**, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

1. An order certifying that Count I may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and the undersigned counsel to represent the class previously set forth and defined above.
2. Adjudging that Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692g.

3. An award of statutory damages for Nicola Clarke and the class members pursuant to 15 U.S.C. §1692k;

4. Attorneys' fees, litigation expenses and costs of suit pursuant to 15 U.S.C. §1692k; and

5. Such other and further relief as the Court deems proper.

Dated: Floral Park, New York
July 9, 2020

By: /s/ Ryan Gentile
_____
Ryan Gentile, Esq.
*Attorney for Plaintiff*
110 Jericho Turnpike – Suite 100
Floral Park, NY 11001
Tel: (201) 873-7675
Fax: (516) 305-5566
rlg@lawgmf.com